[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION (NO. 109) CT Page 7323
The court heard evidence on July 7, 1997 in connection with the plaintiff's motion to modify a visitation order entered March 17, 1997. That order provided, inter alia, that the plaintiff was to have supervised visitation on Saturdays from 8 to 1 at the home of Ms. Pitre's sister. (Gill, J.) That order was modified on May 19, 1997 by the entry of a stipulated agreement which provided that all current orders would remain in effect but that Saturday visitation would take place in the presence of, or under the supervision of, an appropriate professional agency which provides this type of services, the cost of which was to be borne by the plaintiff. The matter was continued to July 7, 1997 at which time this court heard evidence and had an opportunity to observe the demeanor of the parties and their witnesses both on the witness stand and in the courtroom. The parties have not married. Their son Matthew was born on August 20, 1996.
The court finds that the animosity between the parties has affected other family members as well. Luann Michaud is Ms. Pitre's sister referred to in the March 17 order. She is also the wife of Dennis Michaud who is the plaintiff's brother. They themselves have a young child. The situation between the parties has affected their relationship. When supervised visitation occurred at this home Luann Michaud became justifiably upset when her husband's sister Carol Metotte and Carol's mother-in-law Karen Mettote came early on a Saturday morning to join Brian Michaud in visiting his son. However, well-meaning they might have been, the visitors' presence was an added burden to Luann Michaud. Karen Metotte took pictures which Luann found offensive because Metotte had not asked her permission. On a subsequent Saturday when Karen Metotte arrived again, Luanne showed her displeasure. She understood her responsibility to be to supervise Brian's visitation with his son in accordance with her conversations with her sister and her sister's counsel. Additional persons were distracting to her in this role, as she was also running her own household and caring for her own child at the same time. While the court finds that she was clearly in her sister's camp with regard to her opinion of Brian's performance as a father, she cannot be faulted for taking her responsibility seriously. It is also clear to this court that Brian felt that he needed witnesses to his supervised visitation.
His mother, Marguerite Michaud would have been an appropriate CT Page 7324 candidate to supervise visitation pending further orders of the court especially in view of the fact that Brian lives with his parents. Despite Ms. Pitre's assertions, there was no credible evidence to support the position that because she has sought counseling she would not be suitable. Mrs. Michaud holds a job. It is entirely credible that Mrs. Michaud's need for counseling arises in part from the impact that the parties' dispute has had or, the relationships of other family members and her inability to see her grandson freely. However, the court finds that placing Mrs. Michaud in this position in the present volatile climate would unleash further suspicions.
Because of the potential for greater animosity and more suspicion to develop among the parties and their family members, the court ordered that the plaintiff utilize the services of Vernon AMPS, which he had located, for the purposes of supervised visitation on Saturday, from 9-12. It is hoped that he will be able to develop his relationship with his son and that there will be independent observers of his behavior with the child.
The court also does not accord great weight to the evidence that Brian shook the baby too vigorously. The court does give great weight to evidence that Brian has physically assaulted the defendant on several occasions and that on some of those occasions the defendant was holding Matthew or Matthew was in close proximity. The court finds that the defendant has engaged in screaming at the plaintiff and has physically fought with him. The court therefore further orders that the plaintiff undergo individual counseling and that one of the goals of that counseling be anger management. In addition, the court orders that the defendant participate in individual counseling to resolve issues concerning her anger toward and fear of the plaintiff. The court further orders that the issue of visitation be studied by the Family Relations Office. The court directs that the matter be continued until November 10 at which time the court will review the need for continued supervised visitation.
Leheny, J.